**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                                                   No. CR 05-772 JB

DIONYSIUS FOX,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense Based on His Treaty-Recognized Right to Bear Arms for the Purpose of Hunting, filed March 26, 2007 (Doc. 78)("Motion"). The Court held an evidentiary hearing on the motion on May 22, 2007. The primary issues are: (I) whether the right to hunt recognized in the June 1, 1868 Native American Treaty Between the United States of America and the Navajo Tribe of Indians ("Treaty of 1868") prevents the United States from prosecuting Defendant Dionysius Fox for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1); and (ii) whether, in the alternative, Fox should be allowed to present an affirmative defense against the § 922(g)(1) charge brought against him based on the right to hunt acknowledged in the Treaty of 1868. Because the Court finds that the Treaty of 1868 concerns the Navajo Indian Tribe's right to hunt, not individual Navajo Indians' right to hunt, and because the Court finds that 18 U.S.C. § 922(g)(1) is a law of general applicability, the Court concludes that Fox may be prosecuted for being a convicted felon in possession of a firearm even though § 922 (g)(1) did not abrogate the Treaty of 1868. Because the Court finds that there is no basis in law for concluding that

the Navajo Tribe's right to hunt, as recognized in the Treaty of 1868, conflicts with imposing criminal liability on Fox for being a convicted felon in possession of a firearm, the Court will not allow Fox to present at trial the affirmative defense he seeks to assert.

## FACTUAL BACKGROUND

The essential facts of this case are not in dispute.[1] On March 21, 2005, Navajo Police Officer Elroy Naswood found Fox asleep in a running vehicle parked in a driveway of a residence in Navajo, New Mexico. See Government's Response to Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense at 1, filed April 16, 2007 (Doc. 83)("Response"). Naswood subsequently arrested Fox for driving under the influence of alcohol. See id. During an inventory search of the vehicle in which Fox was found, Navajo Police found a sawed-off, double-barrel shotgun and a rifle with a scope. See id. At the time of his arrest for driving under the influence of alcohol, Fox had prior felony convictions for aggravated assault, resisting arrest, and escape, and was prohibited from possessing firearms. See id. On April 12, 2005, a federal grand jury indicted Fox for violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. 924(a)(2). See Indictment, filed April 12, 2005 (Doc. 9).

## PROCEDURAL BACKGROUND

On March 26, 2007, Fox filed his motion to dismiss, or, in the alternative, to present an affirmative defense. See Doc. 78. In his motion, Fox contends that the Treaty of 1868 acknowledged the Navajo Tribe's right to hunt on reservation land, and on unoccupied land contiguous to the reservation, that the Treaty of 1868's recognition of the Navajo Tribe's right to

---

[1] The United States provided a summary of the case's factual background in its response to Fox's motion. Nothing in Fox's motion, reply, or surreply contradicts the United States' description of the case's essential facts. At the evidentiary hearing on this motion, the parties did not dispute any essential factual issue, and both sides argued the motion as raising issues of law.

hunt protects the right of individual Navajo Indians to hunt, that 18 U.S.C. § 922(g)(1) did not abrogate the Treaty of 1868, and that, as such, the United States' "initiation of prosecution against [] Fox for his possession of firearms was defective because [] Fox's treaty-recognized [] right of hunting predated [§ 922(g)(1)] and immunized him from prosecution for possession of hunting firearms."  Motion at 2.  See id. at 2-7.  With his motion, Fox also moves the Court, in the alternative, to allow him to "present his treaty-recognized right to hunt on reservation land as an affirmative defense."  Id. at 7.  "Fox's theory of defense is the existence of his treaty-recognized right to hunt on reservation land, a right which predates the criminal statute with which he is charged and immunizes him from prosecution for possession of a firearm, if possessed for hunting."  Id.

The United States filed a response contesting the arguments and requests contained within Fox's motion on April 16, 2007.  See Doc. 83.  Following that submission, Fox filed his Reply to Government's Response to Defendant's Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense Based on his Treaty-Recognized Right to Bear Arms for the Purpose of Hunting, filed April 30, 2007 (Doc. 84)("Reply").  The Court held an evidentiary hearing on May 22, 2007.  See Clerk's Minutes at 1, filed May 25, 207 (Doc. 91).  At the hearing, Fox's counsel, Roger Finzel, confirmed that Fox was not making "a preemption argument here," and that what he was "talking about is that the 1968 law (§ 922(g)(1)) did not abrogate the 1868 treaty. . . ." Transcript of Hearing at 4:8-11 (Finzel)(taken May 22, 2007).[2]  Fox and Senior Special Agent Frank Ortiz of the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified at the hearing.  See id. at 4:17-5:21(Fox); 47:12-23 (Ortiz).  Following the hearing, the United States filed its Surreply in re Defendant's Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense, filed

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

on March 26, 2007, filed May 23, 2007 (Doc. 89)("United States' Surreply").  Fox replied to the United States' surreply on June 18, 2007.  See Defendant's Sur-Surreply to Government's Surreply to Defendant's Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense Based on his Treaty-Recognized Right to Bear Arms for the Purpose of Hunting, filed June 18, 2007 (Doc. 96)("Fox's Surreply").

## **TREATY OF 1868**

The United States and the Navajo Tribe of Indians concluded the Treaty of 1868 at Fort Sumner, New Mexico, on June 1, 1868.  See Response, Exhibit 2, Treaty of 1868, Preamble.  The Treaty was proclaimed on August 12, 1868.  See id.  Article II of the Treaty sets forth the physical boundaries of the Navajo reservation, defining the land "set apart for the use and occupation of the Navajo tribe of Indians."  Id., Art. II.  The language of Article II -- "for the use and occupation of the Navajo tribe of Indians" -- recognizes the right of the Navajo Tribe to hunt on the land designated as its reservation.  See United States v. Dion, 476 U.S. 734, 738 (1986)("As a general rule, Indians enjoy exclusive treaty rights to hunt . . . on land reserved to them, unless such rights were clearly relinquished by treaty or have been modified by Congress."); Menominee Tribe of Indians v. United States, 391 U.S. 404, 405 (1968)("Nothing was said in the 1854 treaty about hunting . . . rights.  Yet we agree . . . that the language 'to be held as Indian lands are held' includes the right . . . to hunt.").  Article IX of the Treaty provides that the Navajo Tribe "retain[s] the right to hunt on any unoccupied lands contiguous to [its] reservation."  Treaty of 1868, Art. IX.  Together, Article II and Article IX of the Treaty of 1868 establish that the Navajo Tribe has the right to hunt on its reservation land and the land contiguous thereto.  The Treaty is silent regarding with which implements the Navajo tribe may hunt.  See Treaty of 1868.

## 18 U.S.C. § 922(g)(1)

The effective date of 18 U.S.C. § 922(g)(1) is December 16, 1968.  18 U.S.C.A. § 922. Section 922(g)(1) provides that:

> **(g)** It shall be unlawful for any person –
>
>> **(1)** who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).  "The elements of the crime of possession of a firearm by a convicted felon as described in 18 U.S.C. § 922(g)(1) are as follows: [I] The defendant was convicted of a felony; [ii] Thereafter the defendant knowingly possessed a firearm; and [iii] The defendant's possession of the firearm was in or affecting commerce."  United States v. Shunk, 881 F.2d 917, 921 (10th Cir. 1989).  To be convicted of violating § 922(g)(1), a defendant need not have known that it was illegal for a felon to possess a firearm; "the only knowledge required for a § 922(g)[1] conviction is knowledge that the instrument possessed [was] a firearm."  United States v. Capps, 77 F.3d 350, 352 (10th Cir. 1996)(internal quotations and citations omitted).  18 U.S.C. § 922(g)(1) is a statute of general applicability.  See United States v. Gallaher, 275 F.3d 784, 788 (9th Cir. 2001)(citing United States v. Young, 936 F.2d 1050, 1055 (9th Cir. 1991)).

## LAW REGARDING TREATIES WITH INDIANS

The right to hunt on reservation land is a tribal right.  Individual Indians enjoy a right of user in tribal property derived from the Tribe's right.  Hunting rights thus belong to a tribe as a whole and not to any individual member of the tribe.

### 1.     **Basic Principles.**

Congress may appeal or amend, with later statute, the terms and provisions of treaties between the United States and Indian tribes. See Choate v. Trapp, 224 U.S. 665, 671 (1912)("The Tribes have been regarded as dependent nations, and treaties with them have been looked upon not as contracts, but as public laws which could be abrogated at the will of the United States."). When a later enacted statute is inconsistent with a treaty, the statute, to the extent of conflict, renders the treaty null. See Breard v. Greene, 523 U.S. 371, 376 (1998); Hijo v. United States, 194 U.S. 315, 324 (1904)("[Concerning] a conflict between an act of Congress and a treaty -- each being equally the supreme law of the land -- the one last in date must prevail in the courts."). Treaties between the United States and Indian tribes are to be interpreted liberally in favor of the tribes; any ambiguities should be resolved in the tribes' favor. See Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 200 (1999).

Congress may abrogate rights accorded to Indian tribes via treaty if it clearly expresses its intent to do so. See id. at 202. "There must be clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty." Id. at 202-03 (internal quotations and citation omitted). While it has the power to abrogate Indian treaty rights, "the intention to abrogate or modify a treaty is not to be lightly imputed to [] Congress." Menominee Tribe of Indians v. United States, 391 U.S. at 413 (internal quotations and citations omitted). "Absent explicit statutory language, [the Supreme Court has] been extremely reluctant to find congressional abrogation of treaty rights. . . . [The Supreme Court does] not construe statutes as abrogating treaty rights in a backhanded way. . . ." United States v. Dion, 476 U.S. at 739 (internal quotations and citations omitted).

### 2.     Unless Indicated Otherwise, Treaty Rights Vest in the Tribe.

"The right to hunt . . . on reservation land is a long-established tribal right. Individual Indians, however, enjoy a right of user in the tribe's hunting . . . rights." United States v. Felter, 752 F.2d 1505, 1509 (10th Cir. 1985). The right of user is the right to exercise or employ a right or property. See Black's Law Dictionary (8th ed. 2004). In Kimball v. Callahan, 590 F.2d 768 (9th Cir. 1979), the United States Court of Appeals for the Ninth Circuit explained the relationship between treaty rights, tribes, and individual Indians, as it discussed its statement in a earlier case that "treaty rights to hunt . . . are rights of the individual Indian." Id. at 773. The Kimball court maintained that its previous statement concerning individual Indians had to be understood in the context of Mason v. Sams, 5 F.2d 255 (W.D. Wash. 1925), a case it cited in support of that statement. The Ninth Circuit in Kimball v. Callahan stated:

> From Mason it is clear that an individual Indian enjoys a right of user in tribal property derived from the legal or equitable property right of the Tribe of which he is a member. This was the basis for the court's [earlier] statement. . . . Prior to the Termination Act, the Klamath Tribe held treaty hunting . . . rights within its reservation in which the individual members of the Tribe held rights of user. The Termination Act did not affect those rights. That an individual member withdrew from the Tribe for purposes of the Termination Act did not change his relationship with the Tribe as to matters unaffected by the Act, e.g. treaty hunting . . . rights.

590 F.2d at 773. Hunting rights belong to a tribe as a whole and not to an individual member of the tribe. United States v. Three Winchester 30-30 Caliber Lever Action Carbines, 504 F.2d 1288, 1292 (7th Cir. 1974)(citing Whitefoot v. United States, 155 Ct. Cl. 127 (1961), cert. denied, 369 U.S. 681 (1962)).

### 3.     The Impact of Laws of General Applicability on Individual Indians and Tribal Treaty Rights.

"[I]t is [] well settled by many decisions of [the Supreme] Court that a general statute in terms applying to all persons includes Indians and their property interests." Fed. Power Comm'n

v. Tuscarora Indian Nation, 362 U.S. 99, 116 (1960). Moreover, Congress is not required to itemize all potentially conflicting treaty rights it wishes to effect when it passes a law of general applicability; rather, the express terms of a statute can suffice to make clear Congress' intent to abrogate inconsistent treaty rights. See Washington v. Confederated Bands & Tribes of the Yakima Indian Nation, 439 U.S. 463, 479 n.22 (1979). Not all statutes of general applicability that are silent on their applicability to Indian tribes, however, apply to Indian lands. See Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 984 (10th Cir. 2005)(quoting Nero v. Cherokee Nation of Okla., 892 F.2d 1457, 1462-63 (10th Cir. 1989)). Congress must expressly apply a statute to Indians before a court may hold it reaches them if: "[I] the law touches exclusive rights of self-governance in purely intramural-matters; [ii] the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or [iii] there is proof by legislative history or some other means that Congress intended the law not to apply to Indians on their reservations. . . ." Shivwits Band of Paitue Indians v. Utah, 428 F.3d at 984 (quoting Nero v. Cherokee Nation of Okla., 892 F.2d at 1462-63).

Two cases, United States v. Gallaher and United States v. Three Winchester 30-30 Caliber Lever Action Carbines, provide examples of how laws of general applicability relate to Indian treaties, Indian tribes, and individual Indians. In United States v. Gallaher, the Ninth Circuit considered a defendant's argument that his conviction should be overturned, because the district court in which he was found guilty of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), lacked subject-matter jurisdiction. See 275 F.3d at 788. The defendant, a Colville Indian who resided on the Colville Indian Reservation, "contend[ed] that he is exempt from the application of § 922(g)(1), notwithstanding his status as a felon, because Congress did not expressly abrogate the hunting . . . provisions . . . of the Coville Treaty in making it a federal crime for a felon to posses guns and ammunition." Id. In support of that contention, the defendant cited

the provision in the Colville Treaty stating that "the right to hunt . . . in common with all other persons on lands not allotted to said Indians shall not be taken away or in anywise abridged." Id. (quoting The Agreement Between the Colville Confederated Tribes and the United States, May 9, 1891, Art. 6).

The Gallaher court stated that, "[i]n order to exempt tribal members from a federal law of otherwise general applicability, the treaty itself must specifically so provide," and found that the Colville Treaty contained no such language. United States v. Gallaher, 275 F.3d at 788-89 (citing United States v. Burns, 529 F.2d 114, 117 (9th Cir. 1975)). The Ninth Circuit explained that Congress, by passing 18 U.S.C. § 922(g)(1), did not make the exercise of the Colville Treaty right to hunt illegal; rather "the defendant's own actions have limited him from participating fully in his tribe's hunting rights." United States v. Gallaher, 275 F.3d at 789 (quoting United States v. Three Winchester 30-30 Caliber Lever Action Carbines, 504 F.2d at 1292). In the end, the Ninth Circuit in United States v. Gallaher held that "[the defendant lost his right as a Colville Indian to hunt by committing felony crimes. The effect that § 922(g)(1) had on his ability to possess ammunition was an incidental result of his criminal conduct. We hold that the district court had subject matter jurisdiction over this matter." 275 F.3d at 789.

Similarly, in United States v. Three Winchester 30-30 Caliber Lever Action Carbines, a case upon which the Gallaher court heavily relied, the United States Court of Appeals for the Seventh Circuit ruled that an Indian treaty right did not exempt a defendant from criminal liability under 18 U.S.C. § 1201(a)(1), which made it illegal for a convicted felon to possess any firearm. See 504 F.2d at 1289-90, 1293. In United States v. Three Winchester 30-30 Caliber Lever Action Carbines, the defendant, a member of the Menominee Indian Tribe who used weapons to hunt on a former Menominee reservation, contended that, because of his status as an Indian and certain treaty rights

granted to the Menominee Tribe, § 1201(a)(1) did not apply to him. See 504 F.2d at 1289-90. Specifically, the defendant argued that the 1854 Treaty of Wolf River between the Menominee Tribe and the United States ceded a tract of land to the Menominee Indians upon which they retained the right to hunt, that incidental to that right to hunt is the right to possess firearms, and that, therefore, he should be exempt from criminal liability under 18 U.S.C. § 1202(a)(1). See 504 F.2d at 1292.

In reaching its decision, the Three Winchester Carbines court noted that "[i]t is well settled that a federal statute of general applicability is applicable to the native American" and that "[t]his is so unless there exists some treaty right which exempts the Indian from the operation of the particular statute[] in question." Id. at 1291 (citations omitted). The Seventh Circuit in United States v. Three Winchester 30-30 Caliber Action Carbines ultimately held:

> In this case we deal with [a] federal law of general applicability which [has] nothing to do with the regulation of any Menominee Indian treaty right. Any effect on the defendant's right to hunt is merely incidental, and applicable only to him. The treaty rights allegedly abridged belong to the tribe as a whole and not to any one individual. Here the government has not made the exercise of a treaty right illegal, but rather the defendant's own actions have limited him from participating fully in his tribe's hunting rights. Thus, this case is unlike . . . others where governmental regulations affected the entire tribe's treaty rights.
>
> * * * *
>
> Defendant's Indian status does not remove him from the operation of the challenged statute[].

Id. at 1292 (internal citations omitted).

### **LAW REGARDING AFFIRMATIVE DEFENSES**

A criminal defendant is entitled to an instruction on a theory of defense if some evidence and the law supports the theory. See United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006). "A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis." Id. (citing United States v. Turner, 44 F.3d 900, 901 (10th Cir. 1995)). While a defendant is entitled

to an instruction as to his or her theory of defense if there is some evidence to support it, a court is not required to give an instruction that misstates the law. See United States v. Alcorn, 329 F.3d 759, 767 (10th Cir. 2003)(quoting United States v. Hollis, 971 F.2d 1441, 1452 (10th Cir. 1992)). "For purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." United States v. Al-Rekabi 454 F.3d at 1121 (citing United States v. Scull, 321 F.3d 1270, 1275 (10th Cir. 2003)). If a defendant's theory of defense has a reasonable basis in law and fact,

> the trial court should refer to that theory and to the testimony bearing on it and submit the issue with an instruction on the applicable law. The jury should be advised of the defendant's position so as to put the issues raised by the theory of defense squarely before it.

United States v. Haney, 318 F.3d 1161, 1163 (10th Cir. 2003)(quoting United States v. Lofton, 776 F.2d 918, 920 (10th Cir. 1985)). A court of appeals reviews a district court's decision whether to allow a defendant to present an affirmative defense for an abuse of discretion. See United States v. Al-Rekabi, 454 F.3d at 1123.

## ANALYSIS

Because the Court finds that the Treaty of 1868 concerns the Navajo Tribe's right to hunt, because the Court finds that 18 U.S.C. § 922(g)(1) is a statute of general applicability, and because the Court finds that the Treaty of 1868 does not contain language specifically exempting tribal members from § 922(g)(1), the Court concludes that, even though § 922(a)(1) did not abrogate the Treaty of 1868, the United States may prosecute Fox for being a convicted felon in possession of a firearm. Additionally, because the Court finds that there is no basis in law for concluding that the Navajo Tribe's right to hunt, as defined in the Treaty of 1868, conflicts with imposing criminal liability on Fox under § 922(g)(1), the Court concludes that Fox should not be allowed to present

his theory of defense at trial.  The Court will, therefore, deny Fox's motion to dismiss or, in the alternative, to present an affirmative defense.

## I. THE TREATY OF 1868 DOES NOT IMMUNIZE FOX FROM CRIMINAL LIABILITY UNDER 18 U.S.C. § 922(g)(1).

It is not disputed that the Treaty of 1868 provides the Navajo Indian Tribe with the right to hunt on the Navajo reservation and unoccupied lands contiguous thereto.  See Treaty of 1868, Art. II, Art. IX; United States v. Dion, 476 U.S. at 738; Menominee Tribe of Indians v. United States, 391 U.S. at 405; Motion at 3; Response at 4 n.4.  The Court finds, however, based upon the cases both parties have submitted and the Court's independent research, that this right to hunt belongs to the Navajo Tribe as a whole, and not to Fox or to any other individual.  See Treaty of 1868; United States v. Felter, 752 F.2d at 1509 ("The right to hunt . . . on reservation land is a long-established tribal right.  Individual Indians, however, enjoy a right of user in the tribe's hunting rights."); Kimball v. Callahan, 590 F.2d at 773 ("[I]t is clear that an individual Indian enjoys a right of user in tribal property derived from the legal or equitable property right of the Tribe. . . ."); United States v. Three Winchester 30-30 Caliber Lever Action Carbines, 504 F.2d at 1292 (stating that hunting rights belong to the tribe as a whole, not to any one individual).  It can also not be seriously disputed that 18 U.S.C. § 922(g)(1) is a statute of general applicability.  See United States v. Gallaher, 275 F.3d at 788 ("18 U.S.C. § 922(g)(1) is a federal statute of general applicability.").  Nor is it disputed that § 922(g)(1) did not abrogate the Treaty of 1868.  See Fox's Surreply at 3; United States' Surreply at 7.  Further, it cannot be disputed that the language of 18 U.S.C. § 922(g)(1) does not expressly apply the provision to Indians.  See 18 U.S.C. § 922(g)(1).  The issue becomes, then, whether § 922(g)(1), a law of general applicability, applies to Fox, an individual member of the Navajo Tribe, given that § 922(g)(1) does not reference expressly its application to Indians or

abrogate the Treaty of 1868. The Court believes that it does.

Federal statutes of general applicability apply to Indians. See Fed. Power Comm'n v. Tuscarora Indian Nation, 362 U.S. at 116. Congress must expressly apply a statute of general applicability to Indians only if the statute concerns exclusive rights of self-governance in purely intramural matters or the application of the law to the tribe would abrogate rights an Indian treaty guarantees, or there is proof that Congress intended the law not to apply to Indians or their reservations. See Shivwits Band of Paitue Indians v. Utah, 428 F.3d at 984. It cannot be seriously suggested that § 922(a)(1) touches exclusive rights of Navajo tribal self-governance in purely intramural matters. See 18 U.S.C. § 922(a)(1). Nor have the parties presented, or the Court found, proof, such as legislative history or language from the Treaty of 1868, that Congress did not intend § 922(g)(1) to apply to Indians or their reservations. See Shivwits Band of Paitue Indians v. Utah, 428 F.3d at 984; United States v. Gallaher, 275 F.3d at 788-89. With respect to whether the application of § 922(a)(1) to the Navajo Tribe would abrogate its right to hunt as recognized in the Treaty of 1868, the Court finds instructive the Seventh Circuit's opinion in United States v. Three Winchester 30-30 Caliber Lever Action Carbines. There, the Seventh Circuit held that 18 U.S.C. § 1201(a)(1), the predecessor statute to 18 U.S.C. § 922(g)(1), see United States v. Gallaher, 275 F.3d at 789,

> had nothing to do with the regulation of any [] Indian treaty right. Any effect on [an individual member of the tribe]'s right to hunt is merely incidental, and applicable only to him. The treaty rights allegedly abridged belong to the tribe as a whole and not to any one individual. Here the government has not made the exercise of a treaty right illegal, but rather the defendant's own action have limited him from participating fully in his tribe's hunting rights. Thus, this case is unlike . . . others where governmental regulations affected the tribe's treaty rights.

United States v. Three Winchester 30-30 Caliber Lever Action Carbines, 504 F.2d at 1292. The Court recognizes that United States v. Three Winchester 30-30 Caliber Lever Action Carbines is not

binding precedent. The Court also believes, however, that the decision of the <u>Three Winchester Carbines</u> court was well reasoned and is persuasive.[3] As such, the Court will rely on the holding in <u>United States v. Three Winchester 30-30 Caliber Lever Action Carbines</u> to conclude that the application of § 922(a)(1) to the Navajo Tribe does not abrogate its right to hunt under the Treaty of 1868.

Because 18 U.S.C. § 922(a)(1) is a statute of general applicability that does not concern exclusive rights of self-governance in purely intramural matters or apply in a manner that would abrogate the rights the Treaty of 1868 guarantees, and because the Court has been given no reason to believe that Congress intended § 922(a)(1) not to apply to Navajo Indians or their reservation, the Court finds that § 922(a)(1) applies to Fox. The Court concludes that the United States may prosecute Fox for being a convicted felon in possession of a firearm. The Court will deny Fox's request that the Court dismiss his case.[4]

## II.     **FOX'S THEORY OF DEFENSE LACKS A REASONABLE LEGAL BASIS.**

The Court will also deny Fox's alternative request that he be allowed at trial to "present his

---

[3] The Court notes that the Ninth Circuit has also indicated that it believes the Seventh Circuit's decision in <u>United States v. Three Winchester 30-30 Caliber Lever Action Carbines</u> was well reasoned and is persuasive. The Ninth Circuit depended, in large part, on the <u>Three Winchester Carbines</u> court's rationale in reaching its holdings in <u>United States v. Gallaher</u> and <u>United States v. Burns</u>.

[4] Because the Court finds that Fox does not enjoy, under the Treaty of 1868, an individual right to hunt, it does not need to discuss or decide legal issues that an individual right would raise. First, the Court need not decide whether an individual right to hunt implicitly includes a right to bear firearms, as opposed to other weapons. Second, the Court need not decide whether Congress can take away a felon's right to bear arms without abrogating any individual right to bear arms that may exist. <u>Cf.</u> <u>Parker v. District of Columbia</u>, 478 F.3d 370, 395 (D.C. Cir. 2007)("[T]he Court . . . held that convicted felons many be deprived of their right to keep and bear arms. . . . These regulations promote the government's interest in public safety consistent with our common law tradition. Just as importantly, however, they do not impair the core conduct upon which the right was premised.").

treaty-recognized right to hunt on reservation land as an affirmative defense." Motion at 7. Fox's theory of defense is that the Navajo Tribe's right to hunt, as set forth in the Treaty of 1868, immunizes him from prosecution under § 922(a)(1), so long as he possessed the firearms he did for the purpose of hunting. See Motion at 7. Based on the Court's above analysis, which concluded that 18 U.S.C. § 922(g)(1) applies to Fox despite the Navajo Tribe's treaty right to hunt, the Court finds that the law does not support Fox's theory of defense. See United States v. Al-Rekabi, 454 F.3d at 1121 (stating that a defendant is entitled to an instruction on a theory of defense if the law supports the theory). The Court does not believe that the affirmative defense Fox seeks to present has a reasonable legal basis. See id. ("A defendant is not entitled to an instruction which lacks a reasonable legal . . . basis."). In addition, the Court believes that it would be misstating the law if it gave the jury an instruction on the affirmative defense Fox wishes to assert. See United States v. Alcorn, 329 F.3d at 767 (holding that a court is not required to give an instruction that misstates that law). The Court will therefore deny Fox's alternative request to present the affirmative defense discussed in his motion.

**IT IS ORDERED** that the Defendant's Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense Based on His Treaty-Recognized Right to Bear Arms for the Purpose of Hunting is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
  Acting United States Attorney
Louis E. Valencia
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Roger A. Finzel
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*