IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Respondent,

v.                                            No. CV 10-914 JB/GBW
                                                   CR 05-772 JB

DIONYSIUS S. FOX,

        Petitioner.

**PROPOSED FINDINGS OF FACT
AND RECOMMENDATION FOR DISPOSITION**

This matter is before the Court upon the Petition of Dionysius S. Fox ("Petitioner") for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. *Doc. 147*.[1] Having considered the submissions of both parties, extant case law, and the record,[2] the undersigned recommends that the claims raised in the instant Petition for the Writ of Habeas Corpus ("Petition") be denied and dismissed.

**I.    PROCEDURAL HISTORY**

On April 12, 2005, a federal grand jury returned a one-count indictment charging

---

[1] Unless otherwise noted, citations to the docket will correspond to Petitioner's underlying criminal case, *United States v. Dionysius Fox*, No. CR-05-772.

[2] The record includes both the instant cause number and Petitioner's underlying criminal case.

Petitioner with Being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *Doc. 9*.  Nearly two years later, on March 26, 2007, Petitioner filed his "Motion to Dismiss or, in the Alternative, to Present an Affirmative Defense Based on his Treaty-Recognized Right to Bear Arms" ("Motion to Dismiss").  *Doc. 78*.  In the Motion to Dismiss, Petitioner averred that the offense for which he was charged violated his unabrogated treaty right as a member of the Navajo Nation to hunt on Navajo Reservation lands.  *Doc. 78*.  The Court rejected Petitioner's claim and denied the Motion to Dismiss on July 16, 2007.  *United States v. Fox*, 557 F. Supp. 2d, 1251 (D.N.M. 2007); *Doc. 97.*  On February 28, 2008, Petitioner entered a conditional guilty plea to the indictment, wherein he preserved his ability to appeal the denial of his motion to dismiss the indictment.  *Doc 112*.

Five months later, on July 24, 2008, United States District Judge James Browning ("Judge Browning") sentenced Petitioner to 180 months incarceration and three years of supervised release.  *Doc. 132.*  Petitioner then exercised his preserved right to appeal the denial of his Motion to Dismiss.  *See doc. 133.*  On July 29, 2009, the United States Tenth Circuit Court of Appeals affirmed Judge Browning's ruling and denied Petitioner's appeal in a written opinion.  *United States v. Fox*, 573 F.3d 1050 (10th Cir. 2009); *Doc. 143*.  Although Petitioner applied for Writ of Certiorari to the Supreme Court, the Court denied his application on December 7, 2009.  *Fox v. United States*,  130 S. Ct. 813 (2009).

Petitioner timely filed the instant Petition on September 27, 2010. *Doc. 147*. Following this Court's Order, the United States ("Respondent") filed its Response on February 20, 2011. *Doc. 151.*

## II.   ISSUES PRESENTED

Petitioner advances two claims for post-conviction relief. First, Petitioner alleges that trial counsel provided ineffective assistance by presenting him with a choice between essential surgery and demanding a trial. *Doc. 147* at 4.[3] Next, Petitioner avers that the he has been denied the treaty rights guaranteed to him by the "Treaty of 1838"[4] between the United States Government and the Navajo Nation. *Id*. at 5.[5] Specifically, Petitioner

---

[3]   References to page numbers in the instant Petition will correspond to the pagination assigned by the District of New Mexico's Electronic Case Filing System.

[4]   Although Petitioner refers to the "Treaty of 1838," the Court infers from other pleadings in this matter that the relevant treaty is that between the United States and Navajo Tribe signed in 1868. *See* Treaty Between the United States of America and the Navajo Tribe of Indians, U.S.-Navajo Nation, August 12, 1868, 15 Stat. 667.

[5]   I recognize that Respondent discerns a third claim in the instant Petition. *See doc. 151* at 3. Specifically, the Respondent interprets the Petition as including a second ineffective assistance claim based upon his attorney's failure "to argue that Fox was precluded from prosecution based on his unabrogated tribal hunting right." *Id.* Nonetheless, I do not construe Petitioner's attempt to re-litigate the issue of his alleged preclusion from 18 U.S.C. § 922(g)(1) as an individuated ineffective assistance of counsel claim. Petitioner lists two claims in his Petition: (1) "Insufficient Attorney;" and (2) Break of Treaty . . . ." *Doc. 147* at 4-6. The first claim contains only the coercion argument and the second claim focuses on his alleged immunity from 18 U.S.C. § 922(g)(1). Nowhere does Petitioner assert that his counsel was ineffective for not raising the "Treaty" argument. Only in response to the standardized prisoner litigation form's question "[i]f you did not raise this issue in your direct appeal, explain why" does Petitioner assert that "[m]y

contends that "[u]pon signing of the Treaty, the Tribe was released and each individual was allowed to have and use bow [and] arrow, gun, [or] knife . . . [t]he [t]ribal members were, at the time, considered ex-felons and still the [t]reaty has not been abrogated to this day." *Id*. For the reasons outlined below, I recommend that both these claims be denied on the merits.

### III.   STANDARD OF REVIEW FOR 28 U.S.C. § 2255 PETITIONS

Federal courts apply an exacting standard of review to petitions filed pursuant to 28 U.S.C. § 2255. Relief may issue under 28 U.S.C. § 2255 only where a court determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was

---

attorney did not include on these grounds." *Doc. 147* at 6. This remark is insufficient to raise a separate ineffective assistance claim.

Moreover, even if I were to construe Petitioner's second ground as incorporating a veiled claim of ineffective assistance of counsel, the deficiency of the substantive challenge would necessarily require the dismissal of the dependent ineffective assistance of counsel claim. Indeed, in the Tenth Circuit, where a defendant alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, the reviewing court examines the merits of the omitted issue. *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). If the omitted issue is without merit, counsel's failure to raise the issue does not constitute constitutionally ineffective assistance of counsel. *Id.* at 393.

As outlined herein, the Tenth Circuit has ruled upon the applicability of 18 U.S.C. § 922(g)(1) to both the Navajo collectively and Petitioner individually. *United States v. Fox*, 573 F.3d 1050 (10th Cir. 2009). That decision incorporated relevant canons of construction, treaty obligations, case law, and history. *See id.* No part of Petitioner's bald assertion that all Navajo should be considered "ex-felons" at the time they signed their treaty with the United States in 1868 informs or alters the reasoning relied upon by the Tenth Circuit. *See id.* Therefore, despite declining the invitation to construe three separate claims in the instant Petition, if I had considered an ineffective assistance of counsel claim premised on trial counsel's failure to proffer this argument on appeal, I would have recommended its dismissal on the merits.

not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Furthermore, the reviewing court presumes that the proceedings which led to a petitioner's conviction were correct. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). Thus, "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (citation omitted). Fundamentally, to prevail in an action brought under 28 U.S.C. § 2255, a petitioner must show a defect in the proceedings which resulted in a "complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The court must hold an evidentiary hearing on a section 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995). Conversely, however, the court may dispense with an evidentiary hearing when the petitioner's factual allegations are "contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact." *United States v. Caraway*, 2010 WL 3721689 at *2 (D. Kan. Sept. 15, 2010) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("rejecting ineffective assistance

of counsel claims which are merely conclusory in nature and without supporting factual averments"). The burden is with the petitioner to allege facts which, if proven, would entitle him or her to relief. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995). To meet that burden, petitioner's "allegations must be specific and particularized, not general or conclusory." *Id.*

## IV. ANALYSIS

As outlined above, Petitioner advances two collateral attacks on his conviction. The deficiencies of each claim are discussed *seriatim*.

### A. Petitioner's Claim of Ineffective Assistance of Counsel

Petitioner's first claim, entitled "Insufficient Attorney," is that he was given, presumably by trial counsel, "a choice between not signing a plea bargain or signing it so [he could] get the furlough to have surgery to place titanium rods to [relieve] pain from herniated discs." *Id.* Construed liberally, Petitioner is apparently claiming that, by presenting him with this false choice, counsel's advice coerced him such that his guilty plea was involuntary.

#### 1. Standard for ineffective assistance of counsel

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). "Where,

as here, a defendant is represented by counsel during the plea process and enters a plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

As with all other ineffective assistance claims, a petitioner alleging that ineffective assistance led to an involuntary plea must satisfy a two-prong test. *Id.* at 57 (*citing Strickland v. Washington*, 466 U.S. 668 (1984)). First, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687. To do this, a petitioner must show that counsel's performance was outside the wide range of professionally competent assistance. *Id.* at 690. Upon collateral review, counsel is presumed to have acted within the wide range of reasonable professional assistance. *Id.* at 689. Accordingly, the petitioner bears the burden of overcoming this presumption. *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

Second, a petitioner must establish a reasonable probability that absent counsel's objectively unreasonable representation, the outcome of the proceeding would have been different. *Id.* at 694. In the context of a guilty plea, a petitioner cannot satisfy the second *Strickland* prong unless he establishes a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S.

at 59.

> **2.  Petitioner's claim of ineffective assistance of counsel fails to satisfy either of the *Strickland* prerequisites.**
>
>> i.  Petitioner has not established that his counsel's representation fell below an objective standard of reasonableness.

On this element, Petitioner presents only his bald assertion that he was given "a choice between not signing a plea bargain or signing it so [he could] get the furlough to have surgery to place titanium rods to [relieve] pain from herniated discs." *Doc. 147* at 4. Petitioner does not identify the individual who gave him this choice, but the Court infers from context that he alleges the choice was presented by his attorney. Certainly, if Petitioner's attorney had given him the false choice between receiving necessary medical care and having a trial, such advice would not be objectively reasonable. However, in the instant case, this allegation is repeatedly contradicted by the record.

First, the plea agreement signed by Petitioner on February 28, 2008, clearly evinces his intent to voluntarily enter a plea of guilty. *See doc.* 112. Among other things, the plea agreement announced as follows: "[Petitioner] agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement)." *Id.* at 7. Moreover, the plea agreement manifested that "[Petitioner] is pleading guilty because [Petitioner] is in fact guilty, and for no other reason." *Id.* In the plea agreement's final two sentences, which appear directly

above Petitioner's signature and correspond thereto, Petitioner attested as follows: "I have read this agreement and carefully reviewed every part of it with my attorney. I understand the agreement and voluntarily sign it." *Id.* at 8.[6] Notably, the agreement makes no mention of any exchange of a furlough for spinal surgery from Respondent as consideration for Petitioner's agreement to plead guilty.

Second, the transcript of Petitioner's plea hearing demonstrates the voluntariness of his guilty plea. *See United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) (holding that a defendant's statements at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements) (citations omitted). During that hearing, Petitioner confirmed to United States Magistrate Judge Alan Torgerson ("Judge Torgerson") that he understood he was under oath and was required to answer Judge Torgerson's questions truthfully. Pet'r's Plea Hr'g Tr. 7:6-8, Feb. 28, 2008.[7] Further, Petitioner advised Judge Torgerson that he was aware of what he was doing by pleading guilty, that no one had threatened him in order to get him to plead guilty, and that no one had made any promises to him in order to get him to plead guilty other than the stipulations set forth in the plea agreement. *Id.* at 8:5-15. Petitioner also stated that he was satisfied with trial counsel's

---

[6] After reviewing the document, Petitioner, trial counsel, and Respondent each affixed their signatures. *Doc. 112* at 8.

[7] *Doc. 150.*

9

assistance and that he had no complaints at all regarding his representation in the case. *Id.* at 10:8-13. Importantly, Petitioner related that he had no questions about his plea agreement, and that after reviewing it with trial counsel, he voluntarily signed it. *Id.* at 11:11-21. Following this colloquy, Judge Torgerson accepted Petitioner's conditional guilty plea, having found, among other things, that Petitioner entered his guilty plea voluntarily. *Id.* at 17:11-22.

Lastly, the record undermines any argument that Petitioner's counsel was secretly coercing him to plead guilty by leveraging the back surgery. Petitioner's need for surgery was discussed among the parties and the bench on multiple occasions, including the hearing on Petitioner's Motion to Dismiss, Petitioner's plea hearing, and his sentencing hearing. *See docs. 138, 140, 150.* In fact, over eight months prior to Petitioner's guilty plea, Petitioner's counsel advised Judge Browning that he, along with representative of U.S. Pretrial Services and the U.S. Attorney's Office, had "been discussing a possible proposal to the Court regarding the release of [Petitioner] so that he can get some surgery." Pet'r's Mot. Hr'g Tr. 8:2-7, May 22, 2007.[8] Again, at Petitioner's plea hearing, trial counsel notified Judge Torgerson that "[a]lthough it's not part of the plea agreement, we will be submitting to the Court . . . a release order for [Petitioner] . . . for him to undergo surgery on his back." Pet'r's Plea Hr'g Tr. 15:15-20. Thus, Petitioner's counsel explicitly stated on the record and

---

[8] *Doc. 141.*

in front of Petitioner that the back surgery was not part of the *quid pro quo* for his guilty plea. Finally, at Petitioner's sentencing hearing, trial counsel relayed to Judge Browning that "shortly after [Petitioner's] release[,] he was found in violation of his conditions of release, in that he was found to have cocaine in his system, and his conditions of release were violated, and [Petitioner] was not allowed to undertake the surgery."  Pet'r's Sentencing Tr. 5:23-61, July 24, 2008.[9]  At all three of these hearings, Petitioner had the opportunity to address the Court.  Not once did Petitioner make mention of trial counsel coercing him into entering a guilty plea by leveraging the necessary back surgery.

Consequently, Petitioner has failed to establish that his counsel coerced him by presenting a false choice between surgery and a trial. Rather, Petitioner's sworn statements convince me that he entered his guilty plea voluntarily and freely. *See Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (holding that a defendant's sworn testimony at a plea hearing establishes that the defendant knowingly and voluntarily entered a guilty plea).

> ii.  Petitioner has failed to establish that he would not have pled guilty but for his counsel's errors.

As discussed above, in the context of a guilty plea, a petitioner cannot satisfy the second *Strickland* prong unless he establishes a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.  In the instant case, Petitioner has failed to even allege that he would have

---

[9] *Doc. 138.*

11

insisted on going to trial but for the alleged choice presented by his counsel. Particularly given the substantial evidence supporting the voluntariness of Petitioner's guilty plea, this failure is fatal to his request for habeas relief.

Because the record conclusively shows that Petitioner is entitled to no relief due to the absence of either of the *Strickland* prerequisites for his ineffective assistance claim, I recommend that this claim be denied.

### B.   Petitioner's Claim to Exemption from Federal Felon-in-Possession Laws

Petitioner's second challenge alleges a "Break [sic] of Treaty" between the United States and the Navajo. *Doc.* 147 at 5. Petitioner frames his argument in the following terms:

> The Navajo Tribe had been imprisoned for 5 years in New Mexico before the Treaty of [1868]. Upon signing of the Treaty, the Tribe was released and each individual was allowed to have and use bow [and] arrow, gun, knife, or fishing implement to hunt. The Tribal members were, at that time, considered ex-felons and still the Treaty has not been abrogated to this day.

*Id.* Notwithstanding Petitioner's attempt to portray this claim as pertaining to a breach of treaty obligations, the Court interprets this missive as an attempt by Petitioner to relitigate the issue of his alleged exemption from federal felon-in-possession laws. Recognizing this, the Court recommends that this claim be denied.

Under Tenth Circuit precedent, 28 U.S.C. § 2255 is not an appropriate method to relitigate issues that have previously been considered and disposed of on direct appeal.

*Warner*, 23 F.3d at 291. Indeed, "absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on collateral attack by a motion pursuant to § 2255." *United States v. Prichard*, 875 F.2d 789, 790-91 (10th Cir. 1989) (per curiam) (citing *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir. 1978)).

The Tenth Circuit has resolved the issue of whether federal felon-in-possession statutes can be applied to Petitioner. *United States v. Fox*, 573 F.3d 1050 (10th Cir. 2009). In a written opinion, the court unequivocally held that "[a]lthough . . . individual Navajos may assert their treaty-guaranteed hunting rights as a general matter, this does not make [Petitioner] eligible to do so." *Id.* at 1054. The court explained that "[c]onvicted felons - even those whose terms of imprisonment have been completed - are often subject to legal obligations and restrictions that differ from those of the general population." *Id.* (citations omitted). As a result, the court held that "the Treaty of 1868 does not insulate [Petitioner] from the consequences of his criminal activity." *Id.* Instead, "[a]s the treaty itself envisioned," the court found "the United States was free to 'punish [Petitioner] according to its laws.'" *Id.* (citing Treaty Between the United States of America and the Navajo Tribe of Indians, U.S.-Navajo Nation, August 12, 1868, 15 Stat. 667). Thus, the court concluded, "[j]ust as [Petitioner] lost the opportunity to hunt while physically incarcerated as a result of his conviction, 18 U.S.C. § 922(g)(1) prevents [Petitioner] from hunting with firearms as though it was explicitly part of his sentence for his earlier felonies." *Id.* Since ruling on

Petitioner's case, there has been no relevant change in Tenth Circuit law. *See Davis v. United States*, 417 U.S. 333 (1974) (recognizing that a change in the law will allow issues disposed of on direct appeal to become cognizable under 28 U.S.C. § 2255 review).

Despite its nomenclature, Petitioner's second claim does not relate to a breach of treaty between sovereigns. Petitioner seeks simply to relitigate his eligibility for prosecution under 18 U.S.C. § 922(g)(1), and having had the issue resolved against him by the Tenth Circuit, I recommend that this collateral attack be denied.

## V.   CONCLUSION

Having reviewed the pleadings and record in this case, I find that a hearing on the instant Petition is not necessary. The pleadings and record conclusively demonstrate Petitioner is ineligible for relief, and as a consequence, I recommend that his Petition be denied and his case be dismissed with prejudice.

The undersigned **HEREBY RECOMMENDS** that the Petition of Dionysus S. Fox for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 be **DENIED**, and that his case be **DISMISSED WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE